## Arlington

JENSEN PRESS, et al.

v.

LINDA S. ALE

No. 0034-85

Argued May 2, 1985

Decided November 6, 1985

COUNSEL

Susan E. Greenlief (Siciliano, Ellis, Sheridan, Dyer & Boccarosse, on brief), for appellants.

Peter M. Sweeny (Ashcraft & Gerel, on brief), for appellee.

OPINION

**COLEMAN, J.**—Jensen Press, Inc. and its workers' compensation insurance carrier, Commercial Union Insurance Company (collectively, the employer), appeal a decision of the Industrial Commission holding (1) that the treating physician had not abandoned or released the claimant as his patient; (2) that the employer's re-

sponsibility to provide future medical care and treatment included reasonable expenses of physicians and specialists at a pain clinic; (3) that the employer be assessed for claimant's attorney's fee of $500 for defending the claim without reasonable grounds; and (4) that the employer's pending application to suspend benefits for the claimant's unreasonable refusal to accept vocational or rehabilitation training services was moot. We agree with the Commission and affirm its findings and award.

Linda S. Ale (claimant), age thirty-two, sustained a compensable injury to her neck and left shoulder in August of 1980, with an initial diagnosis of cervical and dorsal sprain. A myelogram disclosed "a large defect" at C4-5 and C6-7 necessitating cervical discectomy and fusion performed in December of 1980. Two additional surgeries in August of 1981 and July of 1982 were necessary due to incomplete fusion of C6-7. The 1982 surgery apparently accomplished fusion, but the claimant complained of continued increased pain.

On October 21, 1983, claimant's treating physician, Dr. Henry L. Danaceau, an orthopedic surgeon, reported:

By examination and x-ray I do not have a specific explanation for her increasing symptoms. I have made two suggestions at this time: one, if symptoms are increasing, she consider evaluation at a pain clinic possibly either at University of Virginia or Johns Hopkins; secondly, recommended that she try to return to work. She should not do any bending or lifting but should be able to do a sit-down sedentary type of work.

By letter dated November 1, 1983, Dr. Danaceau forwarded to the University of Virginia pain clinic studies and reports on the claimant, outlined the claimant's history of treatment and surgery, and advised of his recommendation that she be "evaluated and treated" at their pain clinic.

By letter of December 20, 1983, the employer informed claimant's counsel that:

Commercial Union Insurance Company will authorize an evaluation at the University of Virginia Pain Clinic. Commercial Union will not authorize anything beyond an evalua-

tion. We feel that [claimant's] attending physician is capable of providing the same or superior treatment.

Claimant was evaluated at the University of Virginia. Two reports from the University pain clinic dated February 13, 1984, included recommendations and a "plan" for the claimant as follows: that anti-depressant medication be considered, that a daily exercise program be instituted, that she lose weight, that claimant's prescribed medication be changed and that a non-prescription anti-inflammatory medication be administered.

After the reports, Dr. Danaceau saw claimant on February 27, 1984, and by letter on the same date advised the employer's carrier:

She was at the University of Virginia Pain Clinic approximately three weeks ago and has another appointment in one week. *I have advised her to follow up with these visits and would like to re-examine her again after full evaluation and recommendations have been made.* (emphasis added).

The employer refused payment of expenses incurred at the pain clinic and would not authorize the payment of additional expenses, beyond the authorized initial evaluation, asserting that (1) Dr. Danaceau did not refer claimant for treatment but only recommended an evaluation, or (2) assuming *arguendo* that Danaceau did refer for treatment, such referral, in this instance, was neither reasonable nor necessary. In June of 1984, the employee filed for a hearing to compel the employer to pay both past and future expenses at the pain clinic.

The deputy commissioner ruled that Dr. Danaceau had not referred claimant to the pain clinic for medical management, but was "his way of being relieved of this case." He concluded that the treating physician had released or abandoned the claimant as a patient. Also, the deputy commissioner ruled that the "referral" did not constitute the pain clinic as a treating physician pursuant to Code § 65.1-88; nevertheless, he ordered the employer's carrier to pay for al past expenses incurred at the clinic. The claimant was directed to select a new treating physician from a panel to be submitted by the employer's carrier pursuant to Code § 65.1-88.

Upon review before the full Commission, the order of the deputy commissioner was overruled and vacated. The conclusions of the Commission, which we will review *seriatim*, were stated at the outset.

I.

■ Whether a treating physician has released or abandoned his patient most often is determined by the express intent of the physician. Some situations may require analysis of the total circumstances to determine whether discharge, release or abandonment of a patient was intended. In either instance, it is a factual determination which must be proven by clear and convincing evidence in light of the high professional responsibility which a medical doctor owes to provide patient care and treatment.

The employer never contended that Danaceau released or abandoned the claimant. The deputy commissioner's ruling made *ex mero motu* was based on a single statement by claimant during the hearing that Dr. Danaceau would not treat her and had referred her to the pain clinic.

The Commission correctly determined that Dr. Danaceau did not expressly abandon or release claimant from his care. The total circumstances did not suggest an intent to discharge or release claimant. To the contrary, Danaceau's letter to the employer's carrier on February 27, 1984, expressly informed Commercial Union that the referral was to enable him "to re-examine her again after full evaluation and recommendations have been made." The circumstances demonstrate that Danaceau, after attending and treating the claimant for three years, was awaiting the evaluation and recommendations of other specialists to determine his course of treatment for claimant's chronic pain. One refusal to see claimant on request was not a release or discharge. The factual finding of the Industrial Commission is conclusive and binding upon appellate review unless unsupported by credible evidence. Code § 65.1-98; *McCaskey* v. *Patrick Henry Hospital*, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983); *Marval Poultry Company, Inc.* v. *Johnson*, 224 Va. 597, 601, 299 S.E.2d 343, 345 (1983).

## II.

■ Whether the employer is responsible pursuant to Code § 65.1-88 for past and future expenses of physicians and specialists at the University of Virginia or other pain clinic depends upon: (1) whether the treating physician made a medical referral of the patient; and (2) whether such other medical attention was necessary.

> As long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the insured employee, a physician . . . and *such other necessary medical attention.* . . . The employee shall accept the attending physician, unless otherwise ordered by the Industrial Commission, and in addition, such surgical and hospital service and supplies as may be deemed necessary by the attending physician or the Industrial Commission.

Code § 65.1-88. (emphasis added).

■ A long-held principle of the Industrial Commission, founded on Code § 65.1-88, is that medical management of the claimant is to be directed by the treating physician, not by an employer's representative. "[N]either the employer nor its insurance carrier may limit the treating physician in the medical specialist, or treating facilities to which the claimant may be referred for treatment." *Beauchamp* v. *Cummins & Hart*, 60 O.I.C. 37, 39 (1982).

In light of this established rule, the employer's dual assertions that the treating physician made no referral to the pain clinic for treatment, but only *recommended* evaluation, and that the "referral" was neither reasonable or necessary, are untenable. First, the Commission specifically found that Dr. Danaceau did refer claimant to the pain clinic. The finding is supported by credible evidence. Danaceau's letter to the carrier of October 21, 1983, stated, "I have . . . suggest[ed] . . . she consider evaluation at a pain clinic possibly either at University of Virginia or Johns Hopkins;" by letter of November 1, 1983, he forwarded studies and reports to the University of Virginia pain clinic, advising, "I recommended that she consider being evaluated *and treated* at a Pain Management Clinic at University of Virginia, to which she was agreeable" (emphasis added); and by letter to the carrier on

February 27, 1984, Danaceau stated, "She was at the University of Virginia Pain Clinic approximately three weeks ago and has another appointment in one week. I have advised her to follow-up with these visits and would like to re-examine her again after full evaluation and recommendations have been made." We are bound by the Commission's factual finding if supported by credible evidence. The evidence was clear that the treating physician referred claimant to the pain clinic. *See Daniel Construction Co. v. Baker*, ___ Va. at ___, 331 S.E.2d 396, 398 (1985).

The employer's assertion that the referral was for evaluation only is of no consequence. Whether for evaluation or treatment or both, the purpose was to aid the attending physician in his continued treatment of the claimant. An unjustified refusal of such medical service would bar the claimant from further compensation until such refusal ceases. Code § 65.1-88.

Whether "such other medical attention" be deemed necessary is for the attending physician or Industrial Commission to determine, not the employer. Code § 65.1-88. So long as a causal relationship between the industrial accident and the complaints which are the subject of the referral is shown, the employer is financially responsible for the medical attention which the attending physician deems necessary, subject to review by the Commission. The Commission necessarily found the causal relationship between the accident and complaint to have been demonstrated. *See Daniel Construction Co.*, ___ Va. at ___, 331 S.E.2d at 398. The referral to the pain clinic was necessary as determined by the attending physician. We find no reason to disturb the Commission's findings.

## III.

■ Code § 65.1-101 authorizes the Industrial Commission to assess an employer who has defended any proceeding without reasonable grounds the whole costs of the proceedings, including a reasonable attorney's fee. Assessment of costs and attorney's fee is not required in every defense of a proceeding without reasonable grounds. Assessment is left to the sound discretion of the Commission. We will not disturb the administrative assessment of costs or attorney's fees unless there is an abuse of discretion.

The Commission found that "[t]he carrier defended at hearing without reasonable grounds" and assessed a $500 attorney's fee.

As noted, the refusal of the employer to accept responsibility for payment of both past and future medical expenses upon referral from the treating physician was contrary to well established principle. The employer's contentions that Dr. Danaceau did not make a referral of his patient to a pain clinic or that such referral was not necessary (a medical management determination) were so tenuous that the Commission was justified in finding the defense to be unreasonable.

The carrier asserts that it had no knowledge of Dr. Danaceau's letter of November 1, 1983, in which he specifically stated that he "recommended that she consider being evaluated and *treated* at a Pain Management Clinic at University of Virginia." However, from his other letters, reports, and the attendant circumstances, continued refusal to pay the pain clinic expenses between November 1, 1983, and defense of the proceeding on September 24, 1984, without seeking clarification, was unjustified. The Commission found that the carrier had or should have had full knowledge of the intention of the treating physician to require treatment of the claimant at the pain clinic. We agree.

*Sun Oil Co.* v. *Lawrence*, 213 Va. 596, 194 S.E.2d 687 (1973), relied on by the carrier, is distinguishable and not controlling. In *Sun Oil*, the Virginia Supreme Court vacated the Commission's assessment of attorney's fees stating that the granting of a petition for writ of error *ipso facto* established that the defense was based on reasonable grounds. *Id.* at 598, 194 S.E.2d at 688. Here the appeal from the deputy commissioner to the full commission and to this court were both a matter of right. Also, even though the employer prevailed on a majority of the issues before the deputy commissioner, the Commission found the decision not supported by credible evidence. We find no abuse of discretion in the Commission's assessment of attorney's fees.

IV.

On October 11, 1984, the carrier filed for a hearing to suspend compensation benefits due to claimant's unjustified refusal of vocational rehabilitation or placement services. The Industrial Commission summarily dismissed the application, stating: "In view of this opinion and order, the Commission considers. . .[the application] to be moot." The reason advanced by the Commission

was that, although recommendations of rehabilitation in the form of job placement or training had been made, rehabilitation should be pursued in accord with a timetable which gives preference to the claimant's medical needs, which had yet to be fully determined. As noted, the Commission concluded that the referral to the pain clinic was, at least in part, to allow the treating physician to determine the future course of claimant's medical management needs. The employer is required to provide, and the employee is required to accept, both medical and rehabilitation services. The extent to which rehabilitation services must be accepted contemporaneously with medical services will necessarily depend upon the claimant's physical abilities and medical needs. The Commission necessarily held that the claimant's refusal of rehabilitation services was justified when her medical needs had not been determined due to the employer's refusal to provide required medical attention between February and October of 1984. We concur with the summary dismissal of the employer's application. Had a hearing been granted, the Commission could not have determined that claimant's refusal of rehabilitative services was unjustified at a time when both the need for and required medical services were unresolved.

Claimant requests that we assess additional attorney's fees. The Industrial Commission may be motivated by different considerations in the exercise of its discretion to assess attorney's fees than is this court on judicial review. We, in the exercise of the discretion granted by Code § 65.1-101, decline the request for assessment of additional attorney's fees.

*Affirmed.*

Barrow, J., and Duff, J., concurred.